UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| CARBOLINE GLOBAL INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>THE SHERWIN-WILLIAMS<br>COMPANY,<br><br>    *Defendant.* | No. 4:25-cv-01315-MAL |

## MEMORANDUM & ORDER

Before the Court is Defendant The Sherwin-Williams Company's ("Sherwin-Williams") Motion to Dismiss Plaintiff Carboline Global Inc.'s ("Carboline") Amended Complaint.  For the following reasons, the Court **DENIES** the motion.

### I.    Facts & Background[1]

Carboline and Sherwin-Williams both produce a fireproofing paint product, known as intumescent coating, which expands in heat to protect steel from fire damage (Doc. 33 at ¶¶ 1, 4).[2]  Carboline's product is known as Thermo-LagE100, and Sherwin-Williams's product is known as Firetex FX9502.  *Id.*  When exposed to high heat, both products form an insulating char, which buys time for and protects steel structures in a fire.  *Id.* at ¶ 5.  Historically, Carboline's product was an established leader in the intumescent coating industry, but recently Sherwin-Williams took the lead when it began marketing for FX9502 in 2021.  *Id.* at ¶¶ 1, 4, 6.

From 2021 to 2024, Sherwin-Williams claimed that Firetex FX9502 could provide the same life-saving protection as rival products but with less material, labor,

---

[1] All facts pleaded in the operative complaint are assumed true when deciding a motion to dismiss under Rule 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 556 (2007).

[2] Citations to page numbers reflect the court-generated page number at the top of the document, not the page number at the bottom of the page.

1

and cost. *Id*. at ¶ 1. To support its claims, Sherwin-Williams relied on third-party testing from Intertek, which measured the coating's required thickness, also known as dry film thickness. *Id*. at ¶¶ 2, 6. Dry film thickness is important because the thinner the layer needed for fireproofing, the lower the product cost, the faster the application, the lower the labor cost, the lower the transportation costs, and the lower the steel erection costs. *Id*. at ¶ 6.

Paint companies like the two in this lawsuit submit intumescent coatings to third-party testing by independent labs. *Id*. at ¶ 35. Sherwin-Williams hired Intertek to test FX9502, and Intertek found that FX9502 required far less thickness than competitive coatings for beams requiring two hours of protection. *Id*. at ¶ 45. But Carboline alleges that the Intertek testing was wrong, and unbeknownst to customers the thickness requirements for FX9502 were more than double what Sherwin-Williams had advertised. *Id*. at ¶ 2.

Sherwin-Williams used this test data in its advertising in a variety of ways. *Id*. at ¶¶ 7–8. It incorporated the data into competitive bids for fireproofing (including in calculating costs for specific projects), released case studies showing lower thickness requirements, released press releases touting FX9502's efficiencies, produced a YouTube video, and published on an industry website information touting FX9502's lower dry film thickness. *Id*. at ¶¶ 7–8, 48, 51–53. On its own website, Sherwin-Williams published "data sheets" containing information about the FX9502 product, which represents that the data is based on tests conducted by or on behalf of Sherwin-Williams. *Id*. at ¶ 47. Sherwin-Williams also used the Intertek data to generate Firetex Design Estimator ("FDE") schedules—which are documents produced for a specific project that reflect the precise dry-film thickness and material quantities needed for each steel member. *Id*. at ¶¶ 66–67. Other industry publications echoed Sherwin-Williams' advertising. *Id*. at ¶¶ 55–63. As a result, Carboline's market share fell dramatically. *Id*. at ¶ 74. Projects and clients that may have used Carboline's product switched to FX9502 because of the low thickness requirement. *Id*. at ¶¶ 74–76.

2

Then in 2024, Sherwin-Williams unexpectedly released new test results for FX9502's required thickness. *Id.* at ¶ 79. The new results showed that FX9502 required far more thickness to achieve sufficient fire protection for two hours than Sherwin-Williams had been promising for the past three years. *Id.* at ¶ 80. For the 2021 results to have been accurate, Sherwin-Williams would have needed to have made a substantial technological innovation to its own predecessor product to achieve the lower thicknesses. *Id.* at ¶ 84. But the 2024 results showed that there was no such innovation. *Id.* Carboline alleges that Sherwin-Williams knew or should have known all along that the results were false and ignored the falsity because of the marketplace advantage. *Id.* at ¶ 85.

Carboline brings one count against Sherwin-Williams in its amended Complaint—false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Id.* at 36. Carboline alleges that Sherwin-Williams made false statements in advertising FX9502 and in submitting bids to customers. *Id.* at ¶ 99. Specifically, Carboline alleges that Sherwin-Williams represented false dry film thickness values and, derivatively, false gallon requirements to achieve those thickness values. *Id.* at ¶¶ 99–100. Sherwin-Williams moves to dismiss (Doc. 36). In its motion to dismiss, Sherwin-Williams argues that Carboline's Amended Complaint alleges four types of false or misleading speech, but that none of the four types can be the basis for a Lanham Act claim for various reasons.

The four types of speech Sherwin-Williams identifies are: (1) Intertek's speech (Doc. 36 at 13), (2) Sherwin-Williams's FX9502 data sheet (*id.*), (3) the FDE schedules (*id.* at 15), and (4) various promotional speech from Sherwin-Williams (*id.* at 18). Sherwin-Williams argues that the Amended Complaint should be dismissed because: (1) it is not liable for Intertek's speech (Doc. 36 at 13); (2) Sherwin-Williams's data sheets do not contain false information (*id.*); (3) the FDE schedules do not qualify as commercial speech, and even if they did, they were true (*id.* at 15); and (4) either Sherwin-Williams's promotional speech was non-actionable puffery or Carboline cannot show that its promotional speech was false or misleading (*id.* at 18). The

3

Court disagrees that none of the categories of speech are actionable under the Lanham Act.  Therefore, the Court denies the motion to dismiss.

## II.      Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)).  This standard requires a plaintiff show at the pleading stage that success on the merits is more than a "sheer possibility."  *Id*.  It is not, however, a "probability requirement."  *Id*.  A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562 (quoted case omitted).  This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556.  At this stage, the Court accepts as true the factual allegations in the operative complaint.  *Id*.

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The well-pled facts must establish more than a "mere possibility of misconduct." *Id*.  That said, at the motion to dismiss stage, the Court draws all reasonable inferences in the plaintiff's favor. *Rossi v. Arch Ins. Co.,* 60 F.4th 1189, 1193 (8th Cir. 2023).

4

The Lanham Act's prohibition on false advertising in 15 U.S.C. § 1125(a) provides:

> (1) **Any person who, on or in connection with any goods or services**, or any container for goods, **uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any** false designation of origin, **false or misleading description of fact, or false or misleading representation of fact, which**--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> **(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities,** or geographic origin **of his or her** or another person's **goods**, services, or commercial activities,

> **shall be liable in a civil action** by any person who believes that he or she is or is likely to be damaged by such act.

(emphasis added). Based on this statute, the Eighth Circuit has set forth the elements for a claim of Lanham Act false or deceptive advertising:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

## III.    Application of Law to Facts

The Court first addresses the fourth category of speech identified by Sherwin-Williams—what it calls its "promotional speech." This speech includes, but is not limited to, the following statement:

- A 2023 case study where Sherwin-Williams stated that "the intumescent product, Firetex FX9502 from Sherwin-Williams Protective & Marine,

5

required lower installed thickness compared to other coatings—helping designers showcase the steel's attractiveness—with faster application and curing times, plus significantly lower costs." *Id.* at ¶ 53.

Sherwin-Williams claims that this promotional statement cannot be the basis of a Lanham Act False Advertising Claim for two independent reasons: (1) the statement was not false or misleading and (2) the statement is non-actionable puffery. For the reasons below, the Court disagrees.

### i.    False or Misleading

Carboline's Amended Complaint sufficiently alleges that this promotional statement is either false or misleading. False statements generally fall into two categories: "(1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *United Indus. Corp.*, 140 F.3d at 1180. "Where a commercial claim is not literally false but is misleading in context, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *Id.* at 1182.

Carboline's Amended Complaint alleges such a claim. The statement bullet pointed above is "misleading in context." The statement that FX9502 "required lower installed thickness compared to other coatings—which would allow consumers to showcase the steel's attractiveness, to apply and cure the paint faster, and to "significantly lower costs"—suggests that the requisite thickness level was not just a little less thick, but *significantly* less thick than comparable products.

This alone makes the statement misleading in context, but this statement is even more misleading given other context. The additional context is the study commissioned by Sherwin-Williams, referenced on Sherwin-Williams's website, and published on Intertek's website (Doc. 33 at ¶¶ 36, 45, 47). If a potential consumer wanted to estimate how significant the cost savings would be, she would need to look no further than the study, which was public and relied on by Sherwin-Williams for its claims (*Id.*). Further, Carboline alleges facts indicating that the advertising

6

actually conveyed the implied message and thereby deceived a significant portion of consumers, as required. *See United Indus. Corp.*, 140 F.3d at 1182. For instance, Carboline alleges that because of FX9502's alleged time and cost savings, it lost numerous potential clients to Sherwin-Williams resulting in hundreds of millions of dollars in lost sales, and that those customers will now need to have additional coats of Sherwin-Williams FX9502 added to their buildings to prevent fire hazards (Doc. 33 at ¶¶ 76–77, 82).

To the extent Sherwin-Williams suggests that the statements regarding thickness are true because Intertek said they were true, this does not make the statements any less misleading. Carboline's Amended Complaint states facts demonstrating that Intertek was wrong. *See* Doc. 33 at 29 fig. 9 (demonstrating that 2024 results showed over a 100% change in required thickness from the 2021 results). Thus, the claim that FX5902 required "lower installed thickness compared to other coatings"—which would allow consumers to showcase the steel's attractiveness, to apply and cure the paint faster, and to "significantly lower costs" was misleading.

### ii.    Puffery

The promotional statement identified above is not puffery. "Puffery" is a category of statements that cannot lead to liability for false advertising under the Lanham Act. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390–91 (8th Cir. 2004). Puffery includes two types of statements: "(1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *Id.* ("America's Favorite Pasta" was puffery because it was not a measurable claim that could be reasonable interpreted as an objective fact).

The statement discussed above is not puffery because it fits neither definition. It is not an exaggerated statement of bluster or boast on which no reasonable consumer would rely. There is nothing exaggerated about stating that FX9502 requires "lower installed thickness compared to other coatings"—which would allow consumers to showcase the steel's attractiveness, to apply and cure the paint faster, and to "significantly lower costs." A reasonable consumer would rely on that. Nor is

7

this a vague or highly subjective claim. "Lower installed thickness," "significantly lower costs," and applying and curing the paint faster are all measurable.

Because at least one statement of Sherwin-Williams constitutes a false or misleading statement, the Amended Complaint's Lanham Act claim survives the motion to dismiss.

## Conclusion

The Sherwin-Williams Company's Motion to Dismiss Plaintiff Carboline Global Inc.'s Amended Complaint is **DENIED**.

**SO ORDERED,**

This 4th day of August, 2026.

_Maria A. Lanahan_
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

8